THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DARNELL HAMILTON, Defendant-Appellant.

First District (2nd Division)   No. 85—2089

Opinion filed May 5, 1987.

James J. Doherty, Public Defender, of Chicago (Janet R. Stewart and Marc L. Fogelberg, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Rimas F. Cernius, and Mary C. Morris, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant appeals his 20-year penitentiary sentence, with three years of mandatory supervised release, resulting from his convictions for residential burglary, theft, and unlawful use of a firearm following a bench trial. He seeks review as to whether: (1) section 21(e) of the Alcoholism and Substance Abuse Act (hereinafter the Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 6321(e)), violates the due process clauses of the United States and Illinois constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, sec. 2); (2) section 21(e) violates the separation of powers doctrine (Ill. Const. 1970, art. II, sec. 1); and (3) his sentence is excessive.

On July 29, 1984, at 10:30 p.m., Joseph Mikrut, after loading his car in front of his apartment preparing for a business trip, returned to his apartment and left his car engine running. Upon his return 1 to 1½ minutes later, his auto was missing. Mikrut reported the stolen car to the police. About six hours later, on July 30, 1984, at 4:45 a.m., a police officer observed defendant making a number of trips from an apartment complex, about one block south of Mikrut's apartment, to an illegally parked car, later identified as belonging to Mikrut. When the officer approached the car to write a citation, he noticed television and stereo equipment through the back window. Checking the license plate number, he learned that the car had been stolen and requested assistance. Two officers responded and performed surveillance. One officer saw defendant make three trips out to the car carrying objects. When defendant drove off they followed and arrested him. A television set, radio, and dresser drawers were found on the back seat and a nylon bag containing a loaded .38-caliber revolver, previously stolen from a police officer, was found on the front seat.

When police checked the apartment complex, a wide-open window

of a basement apartment was found and the recovered property was identified by the apartment burglary victim and his father.

Defendant was charged by information with residential burglary, unauthorized control of a motor vehicle worth over $300, and possession of a firearm after conviction of a felony. (Ill. Rev. Stat. 1983, ch. 38, pars. 19—3, 16—1(a)(1); Ill. Rev. Stat., 1984 Supp., ch. 38, par. 24—1.1.) On February 1, 1985, following a bench trial, the circuit court found defendant guilty of all charges.

Defendant requested an evaluation by Treatment Alternatives to Street Crimes, Inc. (TASC). TASC recommended residential treatment, finding defendant demonstrated a likelihood for rehabilitation, conditioned on consent of defendant's parole officer. The district parole office supervisor did not agree to the treatment. No reasons were given. Defendant was 24 years old and on parole at the time of his arrest. He began using marijuana at age 13 and started using THC and cocaine at age 20. Defense counsel characterized his client as "a man driven by a drug addiction." The presentence investigation report showed that defendant had been convicted of armed robbery in September 1980 and of residential burglary in October 1982, receiving prison sentences each time. He was sentenced as a Class X offender since he had been convicted three times of a Class 2 felony or greater offense. Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3(c)(7).

During the sentencing hearing, the circuit court stated that the requirement for consent of the parole authority for alternative treatment under the Act prevented him from considering drug rehabilitation treatment and concluded that "society would probably be better served" if defendant were allowed to undergo the TASC drug program. The court sentenced defendant as previously noted. Defendant appeals his sentence.

## I

Defendant first contends that section 21(e) violates the due process clauses of the Illinois and United States constitutions by giving unlimited discretion to the parole authority, which can act arbitrarily. Defendant asserts that both TASC and the court indicated that drug treatment would be helpful; but such treatment was vetoed without reasons by the parole authority. The State replies that defendant waived this issue and that the clause in question is rationally related to the legislature's purpose to authorize a drug treatment sentencing alternative only to defendants with rehabilitative potential.

Section 21(e) of the Act provides, in part (Ill. Rev. Stat. 1985, ch. 111½, par. 6321(e)):

"An addict charged with or convicted of a crime is eligible to elect treatment under the supervision of a licensed program designated by the Department instead of prosecution or probation, as the case may be, unless *** (e) the addict is on probation or parole and the appropriate parole or probation authority does not consent to that election ***."

Section 23 of the Act provides that if a court finds the convicted individual eligible for the section 21 election, the court shall assign drug treatment if defendant is found likely to be rehabilitated through treatment, unless no significant relationship exists between the addiction and the crime or defendant's imprisonment is necessary to protect the public. Ill. Rev. Stat. 1985, ch. 111½, par. 6323.

■■ At sentencing, defendant objected on equal protection grounds to the failure of the parole authority to explain its refusal to grant permission for drug rehabilitation treatment. Defendant did not then raise a section 21(e) due process violation issue at the sentencing hearing or in his motion for a new trial; however, defendant's substantial rights are affected and this issue may be considered under the plain error rule. 87 Ill. 2d R. 615(a).

Due process requires that a statutory provision be rationally related to its legislative purpose. (*People v. Mathey* (1983), 99 Ill. 2d 292, 299, 458 N.E.2d 499.) It will be upheld if it is reasonably designed to remedy legislatively identified threats to the public health, safety, and welfare. (*People v. Upton* (1986), 114 Ill. 2d 362, 373, 500 N.E.2d 943.) A strong presumption of constitutionality is recognized. *People v. Joseph* (1986), 113 Ill. 2d 36, 41, 495 N.E.2d 501.

The predecessor act, the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1973, ch. 91½, par. 120.1 *et seq.*) (the predecessor act) created an alternative to criminal prosecution upon belief that drug treatment might be beneficial. (*People v. Warren* (1977), 69 Ill. 2d 620, 626, 373 N.E.2d 10.) Treatment was afforded to certain drug addicts when the circuit court determined such action was in the best interests of defendant and society. (*People v. Warren* (1977), 69 Ill. 2d 620, 629, 373 N.E.2d 10; *People v. Perine* (1980), 82 Ill. App. 3d 610, 616, 402 N.E.2d 847.) By enumerating disqualifying factors for treatment (Ill. Rev. Stat. 1981, ch. 91½, pars. 120.8(a) through 120.8(f), now Ill. Rev. Stat. 1985, ch. 111½, pars. 6321(a) through 6321(g), the legislature showed it did not intend all drug addicts to be eligible for this alternative treatment. (*People v. McCray* (1983), 116 Ill. App. 3d 24, 26, 451 N.E.2d 985.) The participation of parole officers in the proceedings is to elicit the input of those whose duties and responsibilities include supervision of defendants while not in custody. *People v.*

*Phillips* (1977), 66 Ill. 2d 412, 417-18, 362 N.E.2d 1037.

■ From the foregoing, it cannot be said that the legislature acted irrationally in requiring consent from a parole authority when the court considers the potential for successful treatment of an addict already on parole at the time the subject crime was committed. The next question is whether that input operates as an outright veto of such treatment.

## II

Defendant claims that section 21(e) violated the separation of powers doctrine (Ill. Const. 1970, art. II, sec. 1) because it permits the parole officer, a member of the executive branch, to veto a judicial sentence of drug rehabilitation treatment. The State responds that the judicial sentencing power is not involved since the Act authorizes drug treatment as an alternative to criminal sentencing and that our supreme court has already decided the issue in *People v. Phillips*.

The constitutionality of an almost identically worded clause in the predecessor act (Ill. Rev. Stat. 1973, ch. 91½, par. 120.8(e)) was upheld where the circuit court retained the option of sentencing defendant to probation conditioned on drug addiction treatment; since a defendant could have been sentenced to probation or drug treatment without a probation officer's consent, the predecessor act did not have the effect of dictating the sentence to the judiciary. (*People v. Phillips* (1977), 66 Ill. 2d 412, 416-17, 362 N.E.2d 1037; see *People v. Kuesis* (1980), 83 Ill. 2d 402, 407-08, 415 N.E.2d 323.) The *Phillips* ruling referred to defendants who chose treatment under the predecessor act in order to avoid prosecution (*People v. Phillips* (1977), 66 Ill. 2d 412, 415, 362 N.E.2d 1037; *People v. Simms* (1978), 60 Ill. App. 3d 519, 521, 377 N.E.2d 154; *People v. Anderson* (1977), 48 Ill. App. 3d 891, 893, 363 N.E.2d 449); however, other cases since decided have applied the *Phillips* rationale to instances where the defendants went to trial and were convicted (*People v. Berry* (1983), 118 Ill. App. 3d 1024, 1026, 455 N.E.2d 868; *People v. York* (1980), 87 Ill. App. 3d 1026, 1032, 409 N.E.2d 525).

■ In the foregoing circumstances, participation of probation or parole officers only involved a determination of whether a defendant was eligible for treatment and, after the eligibility determination, the circuit court retained the power to decide whether defendant should actually receive treatment as an alternative to criminal sentencing. The supreme court found that the required consent does not constitute a veto, stating:

"The required consent of the appropriate probation or parole

authority in our act does not constitute a veto of the exercise of judicial authority. The participation of these officers is involved only in the determination of whether a defendant is eligible for consideration. If a defendant is not on probation or parole, naturally these officers are not involved, but if a defendant is on probation or parole and elects to take treatment under the plan it is necessary to have the cooperation of the probation or parole officer whose duty and responsibility it is to supervise the defendant. (See Ill. Rev. Stat. 1975, ch. 38, par. 204—4 (probation officer), and ch. 38, par. 1003—14—2 (supervising parole officer).) Without the assured cooperation of these officers the success of any treatment program would be seriously jeopardized. It is only after the eligibility requirements are satisfied that the court determines whether or not the defendant should be admitted to treatment under the Act." (*People v. Phillips* (1977), 66 Ill. 2d 412, 417-18, 362 N.E.2d 1037.)

In our opinion, *Phillips* controls the disposition of defendant's constitutional separation of powers argument. In weighing the issue of the parole officer's putative veto, we note that there is no requirement in this legislation that the court grant the alternative decision to a treatment program even when the parole officer gives his consent.

Also to be considered in this context are the circumstances presented in *People v. Teschner* (1980), 81 Ill. 2d 187, 190-94, 407 N.E.2d 49. There the supreme court declared the predecessor act provided an alternative to normal sentencing, finding no indication of noncompliance, although that defendant had been on probation and the record, according to the dissent, failed to show consent by defendant's probation officer. (*People v. Teschner* (1980), 81 Ill. 2d 187, 198-201, 407 N.E.2d 49 (Moran, J., dissenting).) *Teschner* thus implicitly supports a construction that the consent of a parole or probation officer may be sought prior to seeking treatment under the Act; however, the absence of such consent does not operate as an executive branch veto of a judicial option. Although consent was specifically denied by defendant's parole officer in the case at bar, absence of either consent or its denial was not construed to have precluded the exercise of judicial discretion in *Teschner*.

In the case *sub judice*, defendant, as a Class X offender, argues that because he is not eligible for probation under the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(c)(2)(C)), the parole officer's refusal to consent leaves the circuit court with no alternative, as in *Phillips*, but it is restricted to traditional criminal

sentencing. Accordingly, defendant maintains, such a restriction under the present facts does violate the separation of powers clause as a veto of judicial authority. *People v. Phillips* (1977), 66 Ill. 2d 412, 415-17, 362 N.E.2d 1037; *People v. Simms* (1978), 60 Ill. App. 3d 519, 521, 377 N.E.2d 154; see *People v. Ruffin* (1977), 46 Ill. App. 3d 448, 453, 361 N.E.2d 49; *People v. Montana* (1942), 380 Ill. 596, 607-08, 44 N.E.2d 569.

The foregoing argument misconceives the nature of the TASC program. The intended treatment program was enacted not as a "sentence" in the traditional criminal conviction milieu; rather, "[t]he treatment under the Act, unlike a sentence, is not a consequence of defendant's guilt. It is instead an alternative to a criminal conviction and the regular sentencing alternatives available under the Unified Code of Corrections. (*People v. Warren* (1977), 69 Ill. 2d 620[, 373 N.E.2d 310]; *People v. Phillips* (1977), 66 Ill. 2d 412; *People v. McCoy* (1976), 63 Ill. 2d 40[, 344 N.E.2d 436].)." (*People v. Teschner* (1980), 81 Ill. 2d 187, 192, 407 N.E.2d 49.) Thus, the legislature has not invaded the prerogatives of the judiciary in providing an alternative, with accompanying qualifications and disqualifications, outside the sentencing procedures. The fact that defendant here is disqualified from consideration under this alternative to sentencing is self-imposed in view of his criminal history. So, too, is defendant's ineligibility for probation since his most recent criminal activity is the basis for the foreclosure of that alternative (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(c)(2)(C)), not the denial of the parole officer's consent.

Defendant complains that no reason was given by the parole officer for withholding his consent. Nothing in the Act requires that reasons be given. As noted above, parole officers are to be consulted because their duties and responsibilities include supervision of defendants not in custody. Their assured cooperation would help the treatment program to succeed. (*People v. Phillips* (1977), 66 Ill. 2d 412, 417-18, 362 N.E.2d 1037.) The reasons for withholding consent under the facts of this case require little, if any, elaboration. It may well be that reasons should be required of parole officers for their determinations of consent or refusal to consent to such a program under other circumstances. Perhaps their reasons also should be subject to judicial review. To require such a procedure, however, lies within the power of the legislature, not the courts.

For the reasons set forth above, we find no basis upon which to strike down section 21(e) as a violation of the separation of powers doctrine.

### III

Defendant's final assignment of error is that the circuit court exceeded its discretion in sentencing him to 20 years of imprisonment and failed to consider his rehabilitative potential.

■ The sentence given to defendant was within the statutory range for one convicted of a Class X offense, 6 to 30 years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(3).) He had previously committed two Class 2 or greater felonies. Defendant was on parole when apprehended, using and driving a stolen auto loaded with the fruits of an apartment burglary. He also had access to a loaded gun found on the front seat of the car. His previous convictions were for crimes against both persons and property. It is not within our prerogatives to reduce a sentence as an act of clemency; a sentence may not be altered absent an abuse of discretion. (*People v. Bergman* (1984), 121 Ill. App. 3d 100, 110, 458 N.E.2d 1370; see also *People v. Harris* (1974), 20 Ill. App. 3d 773, 776, 314 N.E.2d 500.) A court of review must give great weight to the judgment of the circuit court in considering the appropriateness of punishment. (*People v. Godinez* (1982), 91 Ill. 2d 47, 55, 434 N.E.2d 1121; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) We find no abuse of discretion here.

For the foregoing reasons the judgment of the circuit court must be affirmed.

Affirmed.

SCARIANO, P.J., and STAMOS, J., concur.