THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JERRALD L. JAMES, Defendant-Appellant.

Fourth District  Nos. 4—91—0092, 4—91—0093 cons.

Opinion filed August 22, 1991.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

This appeal presents the following question: If a convicted defendant elects treatment under section 10—101 of the Illinois Alcoholism and Other Drug Dependency Act (Act) (Ill. Rev. Stat. 1989, ch. 111½, par. 6360—1) in lieu of incarceration, can he constitutionally be barred from doing so because he is *charged* with a felony offense in an unrelated case, whereas he would not be barred from doing so if, in that unrelated case, he had already been *convicted* of that same felony offense? We hold that the answer is yes.

The facts in these consolidated cases are undisputed. In Champaign County case No. 89—CF—1110 (No. 4—91—0092), defendant, Jerrald L. James, pled guilty in October 1989 to burglary (Ill. Rev. Stat. 1989, ch. 38, par. 19—1) and was placed on probation for a period of 24 months. In August 1990, a petition to revoke defendant's probation was filed, alleging that defendant violated his probation by committing certain traffic offenses. In October 1990, defendant admitted and stipulated to that petition.

In October 1990, the defendant was charged in Champaign County case No. 90—CF—1673 (No. 4—91—0093) with the felony offense of theft with a prior burglary conviction (Ill. Rev. Stat. 1989, ch. 38, pars. 16—1(a), (b)(2)). In December 1990, defendant pled guilty to that charge and the matter was allotted for a joint sentencing hearing with case No. 89—CF—1110.

Prior to the December 1990 joint sentencing hearing, defendant filed a motion for continuance which stated, in part, the following:

"Defendant is a drug addict and is seeking a sentence to the T.A.S.C. Program [Treatment Alternatives to Street Crime, a substance abuse treatment program, providing treatment in accordance with the Act].

T.A.S.C. has indicated that Mr. James is suitable for T.A.S.C. services, including long-term residential substance abuse treatment.

The Champaign County Court Services Office has indicated it would give consent for Defendant to undergo long-term drug treatment.

Defendant is newly charged in 90—CF—2201 with the offense of robbery, with preliminary hearing set for January 8, 1991.

Pendency of a felony charge prevents a sentence to T.A.S.C.

Conviction on the Robbery charge would ordinarily bring a mandatory sentence to the Department of Corrections for Mr.

James because of his prior Class II [*sic*] conviction, however, he would remain eligible for T.A.S.C. under Chapter 111½, Sec. 6360—1.

Defendant plans to assert a defense and to seek a jury trial in 90—CF—2201.

WHEREFORE, Defendant prays that this Court continue the sentencing and resentencing in the causes herein to permit trial of the pending robbery charge in cause 90—CF—2201."

On December 26, 1990, the court conducted a hearing on defendant's motion to continue the sentencing hearing and denied the motion, explaining, in part, as follows:

"Well, the underlying assumption seems to be, for the motions to continue, that a sentence of probation featuring a commitment to TASC is the most appropriate sentence because, as I understand it, the only basis for continuing the sentencing hearing would be to make that available.

We are talking about a substantial continuance here. Since nothing's been done to accelerate the resolution of the robbery charges, I would expect it could not be set for trial any sooner than the March jury term, is what I would expect.

In the event that he is acquitted, we would then be looking at a sentencing hearing late that month and perhaps sometime in April since I'm sure by then the Court's calendar will be filled, and with the current state of things, I couldn't even set a specific date for sentencing in this case because I don't know when the robbery charges would be resolved. I'm assuming there wouldn't be any continuances or any other delays.

In the event that Mr. James were convicted in the robbery case, we would then look at a sentencing hearing in that case, which would either have to precede or succeed this one. If this Court were to proceed with a sentencing with a sentencing for the robbery pending, the same argument can be made, 'But, Judge, he's eligible for TASC. Why tie your hands? Wait to see what happens in the robbery case,' and then, vice versa, should the robbery case proceed to sentencing first, the argument would be made, 'We don't know what Judge DeLaMar's [the judge before whom the motion to continue the joint sentencing hearing was made] going to do.'

*** There comes a point [at] which cases must be resolved.

Realistically, we're looking at a continuance of three, four, maybe five months and all of that necessitated only if one as-

sumes that a sentence to probation with mandatory treatment pursuant to the TASC program is the appropriate disposition.

I simply don't believe it's a sound exercise of the Court's discretion to continue both these cases for that substantial a period of time.

So, the motion for a continuance is denied. Each of the cases is called for sentencing hearing."

The court thereafter sentenced defendant to three years in prison on his burglary conviction in case No. 89—CF—1110 and to two years in prison on his felony theft conviction in case No. 90—CF—1673 with the sentences to be served concurrently.

■■ The statute in question, section 10—101 of the Act, reads as follows:

> "Election of treatment. An addict or alcoholic who is charged with or convicted of a crime may elect treatment under the supervision of a licensed program designated by the Department (hereinafter in this Article referred to as 'designated program') unless (a) the crime is a crime of violence; (b) the crime is a violation of Section 401, 402(a), 405 or 407 of the Illinois Controlled Substances Act, or Sections 4(d), 4(e), 5(d), 5(e), 7 or 9 of the Cannabis Control Act; (c) the person has a record of 2 or more convictions of a crime of violence; (d) *other criminal proceedings alleging commission of a felony are pending against the person*; (e) the person is on probation or parole and the appropriate parole or probation authority does not consent to that election \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 111½, par. 6360—1.

Citing *People v. Neither* (1988), 166 Ill. App. 3d 896, 908, 520 N.E.2d 1247, 1254, defendant correctly points out that because robbery is not a "crime of violence" under section 10—101 of the Act, a robbery conviction does not disqualify an otherwise eligible addict from electing drug treatment. Defendant then argues that section 10—101 violates his constitutional rights to due process and equal protection of the law because (1) it is both an arbitrary and irrational exercise of the State's police power, and (2) its treatment of defendants results in irrational and invidious discrimination. Defendant explains his due process argument in his brief as follows:

> "While [defendant] was otherwise eligible for drug treatment under the Act \*\*\*, shortly before sentencing he was charged with the offense of robbery. As a felony, under section [10—101](d) of the Act[,] the robbery charge automatically disquali-

fied the defendant for drug treatment. (Ill. Rev. Stat. 1989, [c]h. 111½, [par.] 6360—1(d).)

While a *charge* of robbery disqualified the defendant for drug treatment, a *conviction* of robbery would not. \*\*\*

The Act is therefore arbitrary and irrational because it disqualifies an addict *charged* with a collateral non-violent crime while qualifying an addict *convicted* of that same collateral crime. There could be no rational legislative purpose for precluding remedial drug treatment merely on the basis of a charge and not a conviction, particularly where the offense in question is the same. The result is that section [10—101] of the Act violates constitutional due process." (Emphasis in original.)

In *People v. Hamilton* (1987), 155 Ill. App. 3d 555, 557, 508 N.E.2d 385, 387, the court was presented with a similar due process challenge to an earlier version of section 10—101 of the Act, namely, section 21(e) of the Alcoholism and Substance Abuse Act (Ill. Rev. Stat. 1985, ch. 111½, par. 6321(e)). The court rejected this challenge and wrote the following:

"Due process requires that a statutory provision be rationally related to its legislative purpose. [Citation.] It will be upheld if it is reasonably designed to remedy legislatively identified threats to the public health, safety, and welfare. [Citation.] A strong presumption of constitutionality is recognized. [Citation.]

The predecessor act [to the 1985 version of the Alcoholism and Substance Abuse Act], the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1973, ch. 91½, par. 120.1 *et seq.*) \*\*\* created an alternative to criminal prosecution upon belief that drug treatment might be beneficial. [Citation.] Treatment was afforded to certain drug addicts when the circuit court determined such action was in the best interests of defendant and society. [Citations.] By enumerating disqualifying factors for treatment (Ill. Rev. Stat. 1981, ch. 91½, pars. 120.8(a) through 120.8(f), now Ill. Rev. Stat. [1989, ch. 111½, pars. 6360—1(a) through 6360—1(i))], the legislature showed it did not intend all drug addicts to be eligible for this alternative treatment. [Citation.] The participation of parole officers in the proceedings is to elicit the input of those whose duties and responsibilities include supervision of defendants while not in custody. [Citation.]

From the foregoing, it cannot be said that the legislature acted irrationally in requiring consent from a parole authority when the court considers the potential for successful treatment of an addict already on parole at the time the subject crime

was committed." *Hamilton*, 155 Ill. App. 3d at 558-59, 508 N.E.2d at 387-88.

■ Consistent with the standards set forth in *Hamilton*, we hold that section 10—101(d) of the Act (Ill. Rev. Stat. 1989, ch. 111½, par. 6360—1(d)), rendering defendants against whom other felony charges are pending ineligible to elect treatment under the Act, is not unconstitutional. In so holding, we agree with the following argument from the State's brief:

> "The legislature could rationally determine that a person charged with or convicted of one non-violent crime is more suitable for treatment than a person charged with or convicted of a non-violent crime *** who has other felony charges pending against him. *** The legislative purpose behind the *** Act is, in part, to restore addicts to good health and allow them to become productive citizens in the community. Ill. Rev. Stat., ch. 111½, sec. 6351—2 (1989). A person who has not only committed *** a non-violent crime but still has other *** felony charges against him is potentially less likely to become a productive citizen than a person who has only committed *** a non-violent crime and has no further charges against him.
>
> Additionally, the pending felony charges could have a negative impact upon the elected treatment. If the defendant is incarcerated on the pending charges, it may be difficult or impossible for him to attend treatment sessions. Similarly, the defendant's having to appear in court for pretrial hearings and at the actual trial would no doubt interfere with treatment. If the defendant were convicted of the pending felony charges, he could be sentenced to a term of imprisonment. This would obviously thwart an elected treatment plan. Hence, the legislature could have rationally determined that the pending felony charges would interfere with and defeat the purpose of an elected treatment plan."

In addition to these reasons, we note with approval the concerns the trial court expressed regarding the uncertain delay with which it would be confronted if it postponed the sentencing on the burglary and felony theft convictions until the newly filed robbery case had been resolved. As the trial court observed, many months (or longer) might pass before the resolution of the robbery case, thus requiring the sentencing hearing in the other two cases to be held in limbo. The interests of finality in the criminal justice system make that delay inappropriate, constituting another reason why the legislature could rationally provide the legislative scheme that it did.

The State's resources under the Act to deal with drug abusers are finite, and it would make no sense to place a defendant in a residential treatment facility, where the program might last a year or longer, only to have him removed from that program when, as might be the situation in the present case, defendant is convicted of robbery and sentenced to the penitentiary on that offense.

Just because a defendant is *eligible* under section 10—101 of the Act to elect treatment does not necessarily mean that the court will order such treatment; instead, after "giving consideration to the nature and circumstances of the offense, and to the history character and condition of the [defendant]" (see section 10—102 of the Act (Ill. Rev. Stat. 1989, ch. 111½, par. 6360—2)), the court might conclude that (1) no significant relationship exists between defendant's addiction or alcoholism and the crime he committed, or (2) defendant's imprisonment is necessary for the protection of the public. If the court concluded that either of these circumstances were present and accordingly ordered defendant imprisoned on his robbery conviction, that decision would obviously terminate defendant's participation in the drug-abuse program, resulting in a squandering of the State's limited resources.

Defendant's argument that the statute is irrational also overlooks one important factor: where defendant has already been convicted of robbery, defendant has either already been sentenced or will likely be sentenced in the near future; however, when the robbery charge is still pending, no one can tell when (or if) defendant will be sentenced on that charge.

■ Our conclusion that section 10—101 of the Act is rationally based also answers defendant's argument that the statute violates equal protection of the law. In *People v. Coleman* (1986), 111 Ill. 2d 87, 95, 488 N.E.2d 1009, 1013, the Illinois Supreme Court wrote the following:

> "The equal protection clauses of the Federal and State constitutions do not deny the State the power to treat different classes of people in different ways. [Citations.] To comply with equal protection requirements, there must be a reasonable basis for distinguishing the class to which the law applies from the class to which the statute is inapplicable."

■ In *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 368, 483 N.E.2d 1245, 1250, the supreme court wrote that, "Unless legislation operates to the disadvantage of a suspect classification or infringes upon a fundamental right, the legislation, to be upheld as constitutional, must simply bear a rational rela-

tionship to a legitimate governmental interest." In *Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 119, 412 N.E.2d 151, 152, the supreme court identified " 'suspect classification[s]' " as those classifications which involve race, alienage, or national origin. Obviously, a legislative classification of convicted felons into two classes—one class which has felony charges pending and the other class which does not—does not involve "suspect classifications."

For the reasons stated, the judgment of the circuit court in each of these consolidated cases is affirmed.

Affirmed.

LUND, P.J., and McCULLOUGH, J., concur.