NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220657-U

NO. 4-22-0657

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 18, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court ofHanley |
| v. | ) | Livingston County |
| JOHN GIROT, | ) | No. 20CF300 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer Hartmann |
| | ) | Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Steigmann and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, holding:

(1) the trial court's failure to advise defendant of his right to receive an evaluation for Treatment Alternatives for Safe Communities (TASC) probation did not rise to the level of plain error;

(2) defendant was not prejudiced by his counsel's failure to request a TASC evaluation;

(3) clear or obvious error did not occur when the trial court considered at the sentencing hearing that defendant resided with his parents and tested positive for certain substances that day;

(4) trial counsel did not provide ineffective assistance by failing to argue that the trial court relied on improper sentencing factors; and

(5) the four-year sentence of imprisonment imposed by the trial court was not excessive.

¶ 2        Defendant, John Girot, appeals his sentence of four years' imprisonment for the offense of possession of methamphetamine. Defendant argues the trial court erred by failing to advise him of his right to receive a Treatment Alternatives for Safe Communities (TASC) evaluation, or, alternatively, his trial counsel was ineffective for failing to request a TASC evaluation. Defendant also argues the court erred by considering improper sentencing factors and that his sentence was excessive. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        Defendant was charged with possession of methamphetamine (720 ILCS 646/60(a), (b)(1) (West 2020)), possession of a controlled substance (720 ILCS 570/402(c) (West 2020)), unlawful possession of a hypodermic syringe (720 ILCS 635/1 (West 2020)), and unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2020)). The charges of possession of a controlled substance and unlawful possession of drug paraphernalia were later dismissed. The offenses occurred on November 6, 2020, and defendant was released from custody on bond approximately three weeks later.

¶ 5        At a bench trial, two police officers testified that they responded to a call regarding a suspicious person at a gas station on the day of the incident. The officers spoke with defendant at the gas station, and he gave them permission to search his backpack. During the search, the officers located cannabis that had been prescribed to defendant, a substance the officers believed to be methamphetamine, smoking pipes, and hypodermic syringes. The parties stipulated that forensic testing showed the substance the officers recovered was methamphetamine, and it weighed 0.7 grams. One officer testified defendant stated during the encounter that he had a prescription for suboxone, which the officer indicated was commonly

prescribed to treat heroin addiction. The trial court found defendant guilty of possession of methamphetamine and unlawful possession of a hypodermic syringe.

¶ 6        A presentence investigation report (PSI) dated May 3, 2022, was prepared. The PSI indicated defendant was 39 years old and had two prior felony convictions for unlawful possession of a controlled substance. He also had prior felony convictions for delivery of a controlled substance, theft, and aggravated driving under the influence. His most recent felony offense occurred in 2012. He also had several prior convictions for misdemeanor offenses, the last of which was committed in 2016. Defendant reported he had been prescribed suboxone and two psychiatric medications at the time of the offense, but he indicated he was not under the influence of any substances when the offense occurred. He reported that he suffered from post-traumatic stress disorder (PTSD) due to "excessive incarceration." He also suffered from schizotypal personality disorder and attention deficit/hyperactivity disorder (ADHD). He stated he had suffered from these disorders since 2016 and had been prescribed psychotropic medications to treat them.

¶ 7        According to the PSI, defendant reported he had been unemployed since 2015 and had no source of regular income. He indicated his schizotypal personality disorder made it difficult for him to maintain employment. He stated his financial situation was " 'horrible,' " but he was "not too worried" about finances or meeting his basic needs. Defendant lived with his mother, father, sister, niece, and nephew. Defendant stated that, on a typical day, he cooked, cleaned, babysat for his niece and nephew, and cared for his elderly parents.

¶ 8        In the PSI, defendant also reported he had used alcohol, cannabis, and cocaine since he was 17 years old. At the time of his PSI interview, defendant reported he drank alcohol rarely, used cannabis daily, and used cocaine once or twice per week, though he sometimes used

cocaine daily. Defendant stated he first used heroin when he was 18 years old, and he last used it two weeks prior to the PSI interview. He indicated he first used methamphetamine when he was 23 years old and last used it a few days before the PSI interview. He stated he had overdosed on three occasions after using heroin laced with fentanyl. He reported he did not "try to abuse drugs" and was only using them until he could "get his prescription medications right." Defendant stated he did not believe he needed substance abuse treatment but rather needed to get his prescription psychiatric medications and suboxone. He stated his current doctor would not let him have suboxone because he failed his last drug screen. Defendant indicated he would be seeing a "psych doctor" soon. Defendant reported that, in the past, he had participated in a substance abuse treatment program in jail, an inpatient treatment program, and a methadone clinic. The PSI reflected defendant completed a drug screen following his interview with the probation officer, which was positive for cannabis, cocaine, and methamphetamine. He also completed the Illinois Adult Risk Assessment, which indicated he was at a high risk of recidivism.

¶ 9        At the sentencing hearing on May 9, 2022, a probation officer indicated defendant had completed a drug test that day, which came back positive for cannabis, methamphetamine, cocaine, and buprenorphine. The probation officer also stated defendant had admitted that he used cocaine and methamphetamine the night before the sentencing hearing. The trial court asked defense counsel if she had anything to offer in mitigation. Counsel stated: "[M]y client represents to me that he goes through the Will County health department. I believe it's in the PSI regarding his suboxone, and they won't prescribe it if he's testing positive for anything else." Counsel also stated defendant had an upcoming appointment with a psychiatrist "for his psychiatric medicine." The State argued that a sentence of three years' imprisonment was

- 4 -

appropriate, and defense counsel argued that a sentence of probation with substance abuse treatment was appropriate.

¶ 10     Defendant made a statement in allocution in which he requested that the trial court sentence him to probation. Defendant stated: "I'm working on my MRT program for my suboxone to keep me on the straight and narrow with my recovery, go to meetings. I've been doing a lot of that stuff in recovery for years. I know what I need to do." Defendant stated he would comply with probation and do whatever he needed to do to obtain his medication, which he needed to "not be in misery."

¶ 11     The trial court stated it had considered the PSI and the statutory factors in aggravation and mitigation. The court found defendant's criminal history and the need for deterrence to be aggravating factors. The court stated that "[a]ctions speak louder than words" and found defendant had taken "absolutely no responsibility for anything that he's done in connection with this particular case to actually get himself to a better place where he maybe could be a productive member of society." The court noted that, in the approximately 18 months since his arrest, defendant had not engaged in drug treatment, and there was "[n]o cooperation in terms of [his] mental health." The court stated defendant could not get on his "mental health medication" because he was using drugs and noted defendant claimed he was using drugs due to his mental health. The court stated that defendant had used "all these drugs last night" and, by doing so, was "basically flipping [his] finger" at the court and saying he "really [didn't] care."

¶ 12     Addressing defendant, the trial court stated: "You are 39 years old. You are living with your mother. You are doing all these drugs all the time. You are wasting your life." The court also stated:

"I'm not sure that you are ever going to be able to be a productive member of society. I don't think you are ever going to be able to get yourself together and act like a grown man.

You are 39 years old. Absolutely pathetic. I could see this when you are 22, 24, 30 years old; but it's just pathetic to have you sitting in front of me today doing absolutely nothing but these hard drugs over and over again, living at your mom's house. You can't afford to live on your own. You can't afford to take care of yourself, yet you have access to all these different drugs. Methamphetamine, cocaine, heroin, marijuana."

The court noted there was another substance defendant had tested positive before, and the probation officer clarified it was buprenorphine.

¶ 13      The trial court found that a sentence of probation would deprecate the seriousness of the offense and would be inconsistent with the ends of justice. The court sentenced defendant to four years' imprisonment for possession of methamphetamine and a $75 fine for unlawful possession of a hypodermic syringe. This appeal followed.

¶ 14                             II. ANALYSIS

¶ 15      On appeal, defendant argues the trial court erred by failing to advise him of his right to receive a TASC evaluation when it had reason to believe he suffered from a substance use disorder. Alternatively, defendant argues his trial counsel was ineffective for failing to request a TASC evaluation. Defendant also argues the court relied on improper sentencing factors, and his sentence was excessive.

¶ 16                          A. TASC Admonition

¶ 17    Defendant argues the trial court erred by failing to advise him of his right to receive a TASC evaluation pursuant to section 40-10(a) of the Substance Use Disorder Act (Act) (20 ILCS 301/40-10(a) (West 2020)) because he was statutorily eligible to elect TASC probation under section 40-5 of the Act (*id.* § 40-5), and the court had reason to believe he suffered from a substance use disorder. Defendant notes a police officer testified at trial that defendant reported taking suboxone, a medication used to treat heroin addiction. Defendant also notes the PSI indicated that he reported regularly using cannabis, cocaine, and methamphetamine around the time of his PSI interview, and he also reported that he used other drugs in the past.

¶ 18                        1. *Forfeiture*

¶ 19    The State argues defendant forfeited this issue by failing to object to the trial court's failure to admonish him at the sentencing hearing and by failing to include the issue in a postsentencing motion. See *People v. Jackson*, 182 Ill. 2d 30, 69 (1998) ("As a general rule, the failure to object to an alleged error at sentencing and in a post-sentencing motion results in a waiver of that error on appeal."). Defendant contends he did not forfeit the issue because defense counsel requested probation with drug treatment at the sentencing hearing, and it was unnecessary for counsel to explicitly cite section 40-10 of the Act when making this request because the onus was on the court to inform defendant about the procedure.

¶ 20    We find defendant has forfeited this issue. To preserve a sentencing issue for appeal, a defendant is required to both object at the sentencing hearing and raise the issue in a postsentencing motion. See *Jackson*, 182 Ill. 2d at 69. Even if we were to accept defendant's argument that counsel's request for a sentence of probation with drug treatment was sufficient to raise the issue at the sentencing hearing, his postsentencing motion did not mention either TASC probation or probation in general. See *People v. McNulty*, 383 Ill. App. 3d 553, 556 (2008)

(holding the defendant forfeited his claim that the trial court erred by failing to advise him that he was eligible for a TASC evaluation where the defendant failed to raise the issue of alternative sentencing to TASC at the sentencing hearing or in his postsentencing motion).

¶ 21                                    2. *Plain Error*

¶ 22        Defendant argues that, even if we find this issue was forfeited, we may review it under either prong of the plain error doctrine. In the sentencing context, the plain error doctrine allows a reviewing court to consider an unpreserved error if the defendant establishes that a clear or obvious error occurred and either "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). "Under both prongs of the plain-error doctrine, the defendant has the burden of persuasion." *Id.* To obtain relief under either prong of the plain error doctrine, defendant must first show that a clear or obvious error occurred. *Id.*

¶ 23        Article 40 of the Act (20 ILCS 301/40-5 *et seq.* (West 2020)) provides a statutory scheme for the sentencing alternative of probation with substance abuse treatment (commonly referred to as TASC probation) for certain eligible criminal defendants. See *People v. Demsco*, 2013 IL App (3d) 120391, ¶ 3; *People v. Dean*, 363 Ill. App. 3d 454, 456 (2006). Section 40-10(a) of the Act (20 ILCS 301/40-10(a)) provides that, if the trial court has reason to believe an individual charged with a crime suffers from a substance use disorder and finds the individual is eligible to elect TASC probation under section 40-5 of the Act, "the court shall advise the individual that he or she may be sentenced to probation and shall be subject to terms and conditions of probation *** if he or she elects to participate in treatment and is accepted for services by a designated program." If the individual chooses to undergo treatment, the court shall order an assessment by a designated program. *Id.* § 40-10(b). If the court finds on the basis of the

assessment and "other information" that the individual suffers from a substance use disorder and is likely to be rehabilitated through treatment, the court shall place the individual on TASC probation unless it finds no significant relationship exists between the substance use disorder and the offense or the individual's imprisonment is necessary for the protection of the public. *Id.*

¶ 24 In construing a statute that was a predecessor to the Act, our supreme court held that it is mandatory for the trial court to admonish every defendant who the court knows or has reason to believe suffers from drug addiction of the possibility of treatment under the Act. *People v. Richardson*, 104 Ill. 2d 8, 17 (1984); see *People v. Hare*, 2022 IL App (2d) 190848, ¶ 22. These mandatory admonitions do not guarantee that the defendant will receive treatment under the Act but "merely set[ ] into motion the further procedures specified in the statute." *Richardson*, 104 Ill. 2d at 17.

¶ 25 In the instant case, clear and obvious error occurred when the trial court failed to admonish defendant concerning TASC probation pursuant to section 40-10 of the Act. The court had reason to believe defendant suffered from a substance use disorder, as the offenses in the instant case were related to drug use. Moreover, an officer testified at the trial that defendant reported taking suboxone, which was used to treat heroin addiction, and the PSI indicated that defendant reported regularly using methamphetamine, cannabis, and cocaine. Also, it appears defendant was eligible to elect treatment under section 40-5 of the Act (20 ILCS 301/40-5 (West 2020)), as the record does not indicate that any of the exceptions enumerated in that section applied to him. Notably, the State does not argue on appeal that defendant was ineligible to elect treatment under section 40-5 or that the court did not have reason to believe he suffered from a substance use disorder.

¶ 26 a. First Prong Plain Error

¶ 27        While the trial court's failure to admonish defendant pursuant to section 40-10 of the Act constituted clear error, defendant has not shown that either prong of the plain error doctrine applies. First, defendant has not shown that the evidence at the sentencing hearing was closely balanced such that the first prong of the plain error doctrine is applicable. The court's comments indicate it imposed a four-year sentence of imprisonment due to defendant's criminal history, lack of rehabilitative potential, and the need for deterrence. The court noted defendant had not engaged in drug treatment in the approximately 18 months since his arrest and had used multiple drugs the night before the sentencing hearing. The court found this showed defendant "really [didn't] care." Notably, defendant reported in the PSI that he did not believe he needed drug treatment. Also, defense counsel indicated defendant was unable to receive a drug treatment medication, suboxone, at the time of the sentencing hearing because he was testing positive for other substances.

¶ 28        While the trial court indicated it had considered the statutory factors in mitigation, it did not expressly discuss which factors it found were applicable. We note, however, the only statutory mitigating factors that clearly applied were that defendant's conduct did not cause or threaten serious physical harm to another and defendant did not contemplate his conduct would cause or threaten serious physical harm to another. See 730 ILCS 5/5-5-3.1(a)(1), (2), (19) (West 2020). The mitigating factor that defendant was a caregiver for an elderly relative (see *id.* § 5-5-3.1(a)(19)) was also arguably applicable, as defendant indicated in the PSI that he cared for his elderly parents. However, the record contains no information concerning the nature and extent of the care he provided for his parents.

¶ 29        We reject defendant's argument that the aggravating factors of his history of drug offenses and the need to deter him from committing future drug offenses made him a good

candidate for TASC probation, and the impact of these factors would have been "fundamentally different" if the trial court had "initiated the TASC process." While these factors may have made defendant a good candidate for TASC insofar as they indicated he struggled with addiction and that much of his criminal history was related to substance abuse, there was significant evidence that defendant lacked rehabilitative potential, including his continued use of drugs while released on bond awaiting sentencing up until the night before the sentencing hearing.

¶ 30        We conclude that the aggravating factors outweighed the mitigating factors such that the evidence at the sentencing hearing was not closely balanced.

¶ 31                         b. Second Prong Plain Error

¶ 32        We also find defendant has not shown the trial court's failure to admonish him concerning his TASC eligibility amounted to second-prong plain error. A sentencing error is reviewable under the second prong of the plain error doctrine if it is "so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545. "[O]nly an extraordinarily serious error will render a proceeding 'unfair.' " *People v. Johnson*, 2017 IL App (2d) 141241, ¶ 51. Our supreme court has equated second-prong plain error with structural error. *People v. Thompson*, 238 Ill. 2d 598, 613-14 (2010). This means second-prong plain error "must be of a similar kind" as structural error—that is "an error ' "affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." ' " *Johnson*, 2017 IL App (2d) 141241, ¶ 51 (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991))). See also *Thompson*, 238 Ill. 2d at 609 ("An error is typically designated as structural only if it necessarily renders a criminal trial fundamentally unfair or an unreliable means of determining guilt or innocence.").

¶ 33         We find the trial court's failure to admonish defendant pursuant to section 40-10 of the Act was not an error so egregious as to render the sentencing hearing fundamentally unfair. See *McNulty*, 383 Ill. App. 3d at 556-58 (holding the defendant's argument that the trial court erred by failing to advise him that he was eligible for a TASC evaluation was not subject to plain error review on the basis that it affected a substantial right). While defendant did not receive admonishments concerning his TASC eligibility, he was still able to argue for a sentence of probation with substance abuse treatment. The court considered imposing a sentence of probation with drug treatment but found a sentence of imprisonment was warranted due to the defendant's criminal history and lack of rehabilitative potential.

¶ 34         We reject defendant's reliance on *People v. Wallace*, 331 Ill. App. 3d 822 (2002), and *People v. Hamilton*, 155 Ill. App. 3d 555 (1987), in support of his argument that the second prong of the plain error doctrine applies in this case. In *Hamilton*, the defendant argued that a statute that was a predecessor to the Act violated due process by giving unlimited discretion to parole authorities as to whether to consent to a defendant's election for substance abuse treatment. *Id.* at 557-58. The *Hamilton* court held that this issue could be reviewed under the plain error doctrine, stating simply that the "defendant's substantial rights [were] affected." *Id.* at 558. We find *Hamilton* is inapposite, as the due process argument raised by the defendant in that case was fundamentally different from the admonishment issue presented in the instant case.

¶ 35         Regarding *Wallace*, the defendant in that case argued that the trial court erred by failing to order a TASC evaluation before sentencing him to a term of imprisonment. *Wallace*, 331 Ill. App. 3d at 835. We decline to follow *Wallace*. The *Wallace* court relied solely on *Hamilton* in support of its application of the plain error doctrine, and it contained no analysis explaining why the plain error doctrine applied other than perfunctorily stating the defendant's

substantial rights were affected. See *Wallace*, 331 Ill. App. 3d at 835. We note, however, our supreme court has held that "the plain error rule does not mandate review of all errors affecting substantial rights" but rather applies only when such an error affects the fundamental fairness of the proceedings. *People v. Munson*, 171 Ill. 2d 158, 196 (1996). Because the trial court's failure to admonish defendant regarding his eligibility for a TASC evaluation did not render the sentencing hearing unfair (*supra* ¶ 32), defendant is unable to establish second prong plain error.

¶ 36                                 3. *Ineffective Assistance of Counsel*

¶ 37          Defendant alternatively argues that his trial counsel provided ineffective assistance by failing to request a TASC evaluation. Criminal defendants have a constitutional right to the effective assistance of counsel under both the United States and Illinois constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36. That is, "a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

¶ 38          Here, even assuming defense counsel performed deficiently by failing to request a TASC evaluation, defendant has not shown that he suffered prejudice as a result. First, as no evaluation was conducted, we are unable to determine based on this record whether such an evaluation would have been favorable to defendant. Also, pursuant to section 40-10(c) of the Act (20 ILCS 301/40-10(c) (West 2020)), even if a defendant is found to suffer from a substance use disorder, the trial court shall not impose a sentence of TASC probation if it finds on the basis of

the TASC evaluation or other information that the defendant is unlikely to be rehabilitated through treatment. Here, the court's comments at the sentencing hearing indicate that it would have found defendant was unlikely to be rehabilitated through treatment. The court discussed defendant's lack of rehabilitative potential extensively in its comments at sentencing. The court found defendant had taken "absolutely no responsibility for anything that he's done in connection with this particular case to actually get himself to a better place where he maybe could be a productive member of society," noting defendant had not engaged in substance abuse treatment during the approximately 18 months since his arrest. The PSI indicated defendant's medical providers had not been prescribing him suboxone, a medication used to treat drug addiction, because he had been testing positive for other substances. The court found defendant's continued use of drugs while awaiting his sentencing hearing, including using methamphetamine and cocaine the night before the sentencing hearing, showed he "really [didn't] care." The court indicated it did not believe defendant was "ever going to be able to get [himself] together and act like a grown man." Accordingly, a reasonable probability does not exist that the result of the sentencing hearing would have been different if his counsel had requested a TASC evaluation.

¶ 39                    B. Reliance on Allegedly Improper Sentencing Factors

¶ 40          Defendant argues the trial court erred by significantly relying on improper factors when determining his sentence. Specifically, defendant contends it was improper for the court to consider in aggravation that he (1) lived with his parents and (2) tested positive for cannabis and buprenorphine on the day of the sentencing hearing, as he had prescriptions for both medications.

¶ 41                              1. *Forfeiture*

¶ 42          The State argues defendant has forfeited this argument by failing to both object at sentencing and preserve the issue in a postsentencing motion. Defendant contends he preserved

- 14 -

the argument by asserting in his postsentencing motion that "the sentence imposed herein was unduly harsh and punitive in consideration of all of the matters placed in evidence at the sentencing hearing, and in respect of the factors in mitigation which apply in this cause."

¶ 43        Generally, "to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *Hillier*, 237 Ill. 2d at 544. Here, defendant did not object to the trial court considering in aggravation that he resided with his parents and tested positive for cannabis and buprenorphine on the day of the sentencing hearing. Moreover, defendant's reference to mitigating factors in his postsentencing motion cannot be fairly construed as an argument that the court considered improper factors in aggravation. Accordingly, we agree with the State that the claim has been forfeited.

¶ 44                                    2. *Plain Error*

¶ 45        Defendant contends that, even if we find his claim was forfeited, we may review it under either prong of the plain error doctrine or on the basis that his trial counsel was ineffective for failing to object to the trial court's reliance on improper factors. We first consider defendant's plain-error argument. The plain error doctrine allows us to review an unpreserved claim of sentencing error if the defendant shows a clear or obvious error occurred and either "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545. The first step under either prong of the plain error doctrine is determining whether a clear or obvious error occurred. *People v. Jackson*, 2022 IL 127256, ¶ 21.

¶ 46        The trial court generally has broad discretion in determining the sentence a defendant should receive. *People v. Jones*, 168 Ill. 2d 367, 373 (1995). "The trial court must base its sentencing determination on the particular circumstances of each case, considering such

factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Fern*, 189 Ill. 2d 48, 53 (1999). "In determining the appropriate sentence, the sentencing body is to consider all matters that reflect upon the defendant's personality, propensities, purposes, tendencies, and every aspect of the defendant's life relevant to the sentencing decision." *People v. Bannister*, 232 Ill. 2d 52, 91 (2008). "There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning ***." *People v. Bowman*, 357 Ill. App. 3d 290, 303-04 (2005). Also, in assessing whether the court based its sentence on proper factors, we consider the record as a whole. *People v. Dowding*, 388 Ill. App. 3d 936, 942-43 (2009).

¶ 47                                    a. Defendant Living with His Parents

¶ 48           First, defendant contends the trial court erred by considering in aggravation that he lived with his parents because he had a due process right to "preserve the sanctity of his family" under the Fourteenth Amendment of the United States Constitution and Article 1, Section 2 of the Illinois Constitution. Defendant asserts this right includes the freedom to live with closely related family members. Defendant also contends that he has a right to freedom of association under the United States and Illinois constitutions (U.S. Const., amend. I; Ill. Const. 1970, art. 1, § 9), and his associations may not be considered in aggravation by a sentencing court unless they relate to permissible sentencing factors. See *Dawson v. Delaware*, 503 U.S. 159, 165-67 (1992); *People v. Ward*, 154 Ill. 2d 272, 344, (1992) (holding the trial court erred in admitting evidence of the defendant's gang affiliation at sentencing because the State failed to show that his gang affiliation related to any legitimate aggravating factor).

¶ 49           We find defendant has not shown clear or obvious error occurred with respect to the challenged remarks about him residing with his parents. When considering the trial court's

sentencing comments in their entirety, it is clear the remarks about defendant living with his parents were comments on defendant's inability to support himself and be a "productive member of society" rather than an attack on defendant's right to live or associate with his parents. The significance of defendant residing with his parents, to the court, was that he was incapable of living on his own or taking care of himself even though he continually found ways to obtain illegal drugs. The court's comments were supported by the PSI, which indicated defendant had been unemployed since 2015, had no source of regular income, received financial assistance from his parents, and regularly used methamphetamine and cocaine. These matters were relevant to defendant's rehabilitative potential, which is a proper sentencing consideration. See *People v. Livengood*, 223 Ill. App. 3d 350, 355 (1991) ("[A] defendant's rehabilitative potential is one factor to consider in determining the appropriate sentence ***."). The court's consideration of defendant's living arrangements, among other factors related to his potential for rehabilitation, did not constitute clear error.

¶ 50        Defendant also argues that, pursuant to section 5-5-3.1(a)(19) of the Unified Code of Corrections (Code) (730 ILCS 5/5-5-3.1(a)(19) (West 2020)), the trial court was required to consider the fact that he was a caregiver for his elderly parents as a mitigating factor. Defendant contends the court's comments about him living with his mother showed the court improperly construed defendant's caregiving as aggravating rather than mitigating. We disagree. The court made no express reference to defendant's caregiving during the sentencing hearing, and there is no indication in the record that the court did not consider it as evidence in mitigation. (It is possible, however, that the court afforded little weight to this mitigating factor given the lack of evidence as to the type and amount of care defendant provided to his parents other than cooking and cleaning at the house where he personally resided.) Rather, as we have discussed, the court's

disapproving comments about defendant living with his parents related to the fact that defendant was unable to support himself and continually used drugs while being financially supported by his parents. This was relevant to the court's finding that defendant lacked rehabilitative potential, which was a proper sentencing consideration. See *Livengood*, 223 Ill. App. 3d at 355.

¶ 51　　　　　　　　b. Defendant's Use of Cannabis and Buprenorphine

¶ 52　　　　　Defendant also argues it was improper for the trial court to consider in aggravation that he tested positive for cannabis and buprenorphine the day of the sentencing hearing because defendant had prescriptions for both medications. Defendant contends the evidence at his trial showed he had a prescription for cannabis. He also asserts that buprenorphine was merely an active ingredient in suboxone, which the record showed he had been taking as a prescribed medication to treat his drug addiction. Defendant cites *People v. Stevenson*, 2014 IL App (4th) 130313, ¶ 6, for the proposition that suboxone is a brand-name prescription drug that contains buprenorphine and naloxone. Defendant asserts that by considering his use of suboxone in aggravation, the court punished him for taking steps to treat his drug addiction.

¶ 53　　　　　We find defendant has not shown that clear or obvious error occurred with respect to the trial court's consideration in aggravation that he had tested positive for cannabis and buprenorphine on the day of the sentencing hearing. First, the evidence at the sentencing hearing did not establish that defendant had current prescriptions for either of these medications. The only indication in the record that defendant used cannabis as a prescription medication was a police officer's trial testimony that he found cannabis that had been prescribed to defendant at the time of the offense, which occurred approximately 18 months prior to the sentencing hearing.

There was no evidence defendant had a current prescription for medical cannabis at the time of the sentencing hearing.

¶ 54　　　　Also, the evidence at the sentencing hearing did not establish defendant was taking suboxone pursuant to a prescription at that time. In fact, both the defendant's statements in the PSI and defense counsel's representations to the trial court at the sentencing hearing indicated defendant's doctor was refusing to prescribe him suboxone because he had tested positive for other substances.

¶ 55　　　　Even if we were to accept defendant's argument that the trial court erred in considering his use of cannabis and buprenorphine in aggravation, the court's consideration of these factors was "so insignificant that it did not lead to a greater sentence." *People v. Heider*, 231 Ill. 2d 1, 21 (2008). The record shows that, in addition to these substances, defendant also tested positive for methamphetamine and cocaine on the day of the sentencing hearing and admitted he had used those substances the night before the hearing. The PSI also indicated that defendant reported using these substances regularly while he was released on bond. Given the uncontroverted evidence that defendant used illicit substances up until the night before the sentencing hearing, we cannot say defendant's use of cannabis and buprenorphine as well was a significant factor in the court's determination of the sentence.

¶ 56　　　　　　　　　　　3. *Ineffective Assistance of Counsel*

¶ 57　　　　Alternatively, defendant argues his trial counsel provided ineffective assistance by failing to object to the trial court's consideration in aggravation that he lived with his parents and used cannabis and buprenorphine. "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *Domagala*, 2013 IL 113688, ¶ 36. As we have found that

the challenged sentencing factors were either not improper or carried such insignificant weight that they did not affect the length of the sentence (see *supra* ¶¶ 48-55), counsel's failure to object to the court's consideration of these factors did not constitute ineffective assistance. See *People v. Baker*, 2022 IL App (4th) 210713, ¶ 75 ("Because we find no error, defendant cannot establish either the occurrence of plain error or ineffective assistance of counsel.").

¶ 58                                    C. Excessive Sentence

¶ 59        Finally, defendant argues the trial court's sentence of four years' imprisonment for the offense of possessing less than one gram of methamphetamine was excessive. Defendant contends the court failed to adequately consider his history of mental illness and drug addiction and how these matters related to his criminal record and financial instability.

¶ 60        The trial court has broad discretion in imposing a sentence, and its sentencing decision is entitled to great deference. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). "The trial judge has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *Id.* The appellate court may not substitute its judgment for that of the trial court merely because it would have weighed these factors differently. *Id*. A trial court's sentencing decision may not be altered on review absent an abuse of discretion. *Id.* at 209-10. "[A] sentence within statutory limits will be deemed excessive and the result of an abuse of discretion by the trial court where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Id.* at 210.

¶ 61        Here, the trial court did not abuse its discretion by sentencing defendant to four years' imprisonment. The sentence was an appropriate exercise of the court's discretion in light of defendant's extensive criminal history and low rehabilitative potential. Specifically, the court

stated it did not believe defendant would ever be able to be a productive member of society, noting defendant had not engaged in drug treatment after his arrest and continued to use drugs up until the night before the sentencing hearing. While the sentence was one year greater than the State's recommendation of three years' imprisonment, the court was not bound by the State's sentencing recommendation. See *People v. Streit*, 142 Ill. 2d 13, 21-22 (1991). Moreover, the sentence was well within the applicable range, which was an extended-term range of 2 to 10 years' imprisonment due to defendant's criminal history. See 720 ILCS 646/60 (West 2020); 730 ILCS 5/5-4.5-40, 5-8-2(a), 5-5-3.2(b)(1) (West 2020).

¶ 62　　　　We reject defendant's argument that his sentence should be lowered on the basis that the trial court overlooked how his drug addiction and mental health problems contributed to his criminal conduct and failed to adequately consider these factors as mitigating. The court was not required to view defendant's history of drug addiction as mitigating. Rather, "a history of substance abuse is a 'double-edged sword' that the trial court may view as a mitigating or aggravating factor." *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 105. Here, the court properly found defendant's history of drug addiction to be aggravating because it lessened his rehabilitative potential. See *id.* ¶ 108 ("[T]he court could have properly concluded that defendant's drug addiction lessened his rehabilitative potential, increased the seriousness of the offense, increased the need to protect society, and increased the need for deterrence.").

¶ 63　　　　We also reject defendant's argument that the trial court failed to adequately consider his mental health issues as mitigating evidence. The court indicated it had considered the PSI, which contained information about defendant's mental health problems. While the court did not expressly indicate that it found defendant's mental health history to be mitigating, it was not required to "recite and assign a value to each factor it ha[d] considered." *People v. McGuire*,

2017 IL App (4th) 150695, ¶ 38. Moreover, the court would have been within its discretion in not finding defendant's history of mental illness to be mitigating or in affording little weight to it as a mitigating factor. See *People v. Wheeler*, 2019 IL App (4th) 160937, ¶ 44 ("[A] defendant's mental or psychological impairments are not inherently mitigating.").

¶ 64 Defendant contends his mental health problems fell under the following statutory factors in mitigation: (1) there were substantial grounds tending to justify or excuse his criminal conduct (730 ILCS 5/5-5-3.1(a)(4) (West 2020)), (2) his imprisonment would endanger his medical condition of PTSD (*id.* § 5-5-3.1(a)(12)), (3) he had an intellectual disability (*id.* § 5-5-3.1(a)(13)), and (4) he was suffering from a serious mental illness at the time of the offense which substantially affected his ability to understand the nature of his acts or conform his conduct to the requirements of the law (*id.* § 5-5-3.1(a)(16)). However, based on the information in the record concerning defendant's mental health issues, it is not clear that any of the foregoing factors apply.

¶ 65 First, the trial court would have been within its discretion in finding that sections 5-5-3.1(a)(4) and (a)(16) of the Code (*id.* § 5-5-3.1(a)(4), (a)(16)) did not apply. The only evidence supporting either of these factors is defendant's statement in the PSI that he used illegal drugs to self-medicate his mental illnesses. The court could have reasonably found this did not rise to the level of substantial grounds tending to excuse defendant's possession of methamphetamine and that his mental illnesses did not substantially affect his ability to refrain from possessing methamphetamine. Also, there is no evidence in the record that defendant's mental illnesses—namely, ADHD, PTSD, and schizoaffective personality disorder—constituted an intellectual disability such that section 5-5-3.1(a)(13) of the Code (*id.* § 5-5-3.1(a)(13)) applied. While defendant notes he was not able to accurately recall some past events in the PSI,

nothing in the record indicates this was due to an intellectual disability. Finally, while defendant argues that his incarceration would endanger his medical condition of PTSD, which he indicated in the PSI was related to his past incarceration, the court would have been within its discretion to find this factor did not apply. The record does not indicate defendant would not be able to receive adequate treatment for his PTSD in prison.

¶ 66                         III. CONCLUSION

¶ 67       For the reasons stated, we affirm the trial court's judgment.

¶ 68       Affirmed.